

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 11, 2013

**BY FACSIMILE**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/17/13

Re:  **United States v. Johnny Morgan,**
      12 Cr. 223 (VM)

Dear Judge Marrero:

       On September 9, 2013, the defendant submitted a letter to the Court ("Def. Ltr."), seeking (1) an order regarding the disclosure schedule the Court set at the status conference on September 4, 2103; and (2) "open file" discovery. The Government respectfully submits this letter in response, and to request: (1) a modification of the schedule set by the Court at the status conference held on September 4, 2013 for production of materials pursuant to Title 18, United States Code, Section 3500 ("3500 material"); and (2) a protective order. The Government raised these issues with defense counsel on September 10, 2013 and was informed that defense counsel has no objection to the requested modification of the schedule, but does object to the proposed protective order.

## Background

       This case arises from an incident in which the defendant pulled out a gun in a lounge and bar in the Bronx (the "Lounge") and fired multiple gunshots outside of the Lounge. In the early morning of February 20, 2012, the defendant was escorted out of the Lounge. Compl., 12 Mag. 587, ¶ 3. Shortly thereafter, the defendant returned to the Lounge, became upset, and started yelling when he was asked to leave. Id. Security personnel at the Lounge approached the defendant and escorted him towards the door of the Lounge. Id. The defendant pulled out a black pistol. Id. The defendant then left the Lounge and walked into the street. Id.

       Officers of the New York City Police Department ("NYPD") responded to a 911 call about shots fired in the vicinity of the Lounge. Id. at ¶ 6. Officers then responded to a second 911 call about a man with a gun in the vicinity of the Lounge. Id. Officers responding to

The Honorable Victor Marrero
September 11, 2013
Page 2 of 8

the second, man-with-a-gun call encountered and arrested the defendant. Id. Before his arrest, the defendant was observed extending his arm towards the parked cars near where he had been walking. Id. A Glock, model 23, .40 caliber, semiautomatic pistol, with a 13-cartridge capacity magazine (the "Glock"), was found at approximately the same location where the defendant had extended his arm. Id. at ¶ 7. Four spent cartridge casings were recovered diagonally across the street, less than a block away from the Lounge. Id. at ¶ 8. Ballistics analysis establishes that the cartridge casings recovered diagonally across the street from the Lounge were discharged from the Glock. Id. at ¶ 8.

The defendant, who has previously been convicted in this District of Possession with Intent to Distribute Marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(D) (United States v. Morgan, 08 Cr. 727 (LAK)), was charged with violating Title 18, United State Code, Section 922(g) for possessing a firearm after having been convicted of a Class D felony.

The defendant was initially represented in this case by defense counsel Gary Becker. William Stamper, Samuel Talkin, and then Rita M. Glavin were later appointed as counsel for the defendant. Discovery was produced to the defendant beginning on or about March 30, 2012. As set forth in more detail below, the discovery provided to the defendant more than a year ago inadvertently included documents containing confidential information about the witnesses in this case.

I. **A Modification to the Disclosure Schedule in this Case is Warranted**

A. **Applicable Law**

Title 18, United States Code, Section 3500(a) states:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

See also Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided by 18 U.S.C. § 3500").

The Second Circuit has repeatedly held that district courts may not order advanced disclosure of Government witness statements under the Jencks Act. See, e.g. United States v. Coppa, 267 F.3d 132, 145-46 (2d Cir. 2001) (holding that the district court exceeded its

The Honorable Victor Marrero
September 11, 2013
Page 3 of 8

authority in finding that the Government had a constitutional obligation to disclose immediately impeachment material relating to potential government witnesses upon the defendants' request). The Second Circuit has also made clear that 3500 material is not intended to be used for trial preparation. See United States v. Percevault, 490 F.2d 126, 129 (2d Cir. 1974) (3500 material is a "limited discovery device represent[ing] a legislative determination that access to a witness' statements could be useful in impeaching a witness but <u>was not intended to be utilized in preparation for trial</u>." (emphasis added)).

Courts in this district are highly protective of the identities of civilian witnesses, especially in cases involving violence. See, e.g., United States v. Remire, 400 F. Supp. 2d 627 (S.D.N.Y. 2005) ("[C]ourts in this circuit are especially reluctant to require the disclosure of witness lists in cases such as this one that involve allegations of crimes of violence."); United States v. Robles, 2005 WL 957338, at *1 (GEL) (the disclosure of a witness list "is particularly inappropriate in this case, which involves charges of violent crimes, where witnesses will include cooperating individuals and victims").

In light of the heightened safety considerations for civilian witnesses, the Government in this District has often turned over the names of the civilian witnesses (and 3500 material which identifies those witnesses) on the morning the witness is scheduled to testify. Many courts have explicitly approved of the Government's procedure with respect to civilian witnesses, which discloses 3500 material well before the Jencks Act requires. See, e.g., United States v. Angel Martinez, 06 Cr. 987 (DC) (then-District Judge Denny Chin permitted the Government to turn over Rule 16 material and 3500 material for a critical Government witness on the morning that civilian witness was expected to testify, and allowed production of 3500 material for several civilian witnesses who grew up in the defendant's neighborhood on the morning of their testimony).

B. Discussion

Within a day of her appointment, the Government re-produced to Ms. Glavin almost 3,000 pages of Rule 16 discovery previously provided to the defendant. On September 6, 2013, the Government arranged for new counsel to begin inspecting the physical evidence, which was two days after she was appointed. In addition, Mr. Talkin, the defendant's previous counsel, assured the Court at the September 4, 2013 conference that he would promptly provide his entire file to Ms. Glavin. Ms. Glavin informed the Government that she has in fact received that file. Finally, the Government has agreed to allow Ms. Glavin to review the minutes of the state grand jury testimony in the Government's offices this week.[1] All of these materials will allow the defendant and his counsel to prepare fully for trial.

---

[1] In addition to the Rule 16 discovery, defense counsel is also in possession of witness interviews which were, inadvertently produced in April 2012, as described in more detail infra.

The Honorable Victor Marrero
September 11, 2013
Page 4 of 8

        The Court had ordered the Government to turn over the state grand jury testimony in this case on September 6, 2013, and to begin turning over 3500 material on a rolling basis beginning September 13, 2013.[2] The Government proposes to modify this schedule as follows. With respect to law enforcement witnesses, the Government proposes to produce 3500 material on Wednesday, September 25, 2013 -- a date that is earlier than the custom in this District and much earlier than the Jencks Act requires. With respect to civilian witnesses, the Government proposes to provide 3500 material on Friday, September 27, 2013. The proposed modifications to the Court's schedule are warranted because (1) this case involves allegations of violence and raises issues of witness safety, and (2) it will cause no undue hardship to defense counsel, and will still amply satisfy the Government's 3500 obligations. Moreover, as noted above, defense counsel does not object to the Government's proposed modifications.

        First, the nature of the crime charged and the defendant's criminal history merit the proposed modification. The defendant is charged with being a felon in possession of a firearm. This charge arises from an incident in which, after he was asked to leave a lounge in the Bronx, he brandished a gun and fired off gunshots in a Bronx neighborhood. The defendant has a previous conviction for criminal possession of a weapon, as well as convictions for reckless endangerment, resisting arrest, and a conviction for narcotics distribution in this District.

        Moreover, the Government's trial proof is not document intensive, and the 3500 material for civilian witnesses is very limited. It therefore can be reviewed effectively in a short period of time, and certainly in the three days before trial. As noted above, production on this schedule complies with the relevant statutory obligations and the attendant case law. See Percevault, 490 F.2d at 129.

## II.    The Protective Order Sought by the Government is Warranted Here

### A.    Applicable Law

        Rule 16(d)(1) addresses the Court's ability to regulate discovery through protective and modifying orders. The Rule provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Id. The Supreme Court has long approved protective orders under this Rule, directing that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." Alderman v. United States, 394 U.S. 165, 185 (1969). Protective orders are "expressly designed to assure that a defendant's right to a fair trial are not overridden by the confidentiality and privacy interests of others." United States v. O'Keefe, No. 06 Cr. 0249 (PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007).

---

[2] The Government apologizes for not seeking a modification of the Court's order before September 6, 2012.

The Honorable Victor Marrero
September 11, 2013
Page 5 of 8

### B.     Discussion

The Government has learned that, in the course of making Rule 16 discovery in this case, the Government inadvertently included documents containing confidential information about the civilian witnesses in this case (the "Confidential Information"). Specifically, on April 4, 2012, the Government produced a disc stamped with Bates number JM000215, which was believed to contain surveillance footage from a business near the Lounge depicting the defendant in the vicinity of the Lounge. In fact, in addition to the surveillance footage, the disc contained the Confidential Information, which was not Bates numbered. The Confidential Information includes, among other things, database searches regarding civilian witnesses in the case, including telephone numbers and home addresses for those witnesses, and reports of the statements of multiple civilian witnesses, which include biographical information (e.g., dates of birth, addresses, phone numbers) for those witnesses.

Many of the documents contained in the Confidential Information, such as reports of witness statements, were not Rule 16 discovery and should not have been produced at the Rule 16 stage. Other documents, like the database information about civilian witnesses, and the statements of individuals who are unlikely to be called as witnesses, should never have been produced to the defendant at all. None of the documents should have been produced without review for the types of sensitive information, like home addresses and dates of birth, which must be redacted.

The defendant has received Rule 16 discovery, and in advance of trial he will receive all of the materials called for by the Jencks Act and United States v. Giglio, 405 U.S. 150, 154 (1972). There is no legitimate ground for the defendant to possess the types of personal information mistakenly provided to him in the Confidential Information, and the Government therefore seeks an order requiring: (a) that the defendant immediately return to his counsel the Confidential Information (and all copies thereof); (b) that the defendant may not obtain or be provided any further Confidential Information (c) that the defense return or destroy the Confidential Information (and any copies thereof), at the conclusion of the trial or when any appeal has become final; (d) that the defense is precluded from disseminating the Confidential Information (and any copies) to anyone other than defense counsel, and any paralegal or staff employed by the defense; and (e) that the defendant himself is precluded from taking any Confidential Information (or any copies thereof), into any jail facility, either before, during, or after trial; except that the defendant may review Confidential Information in the possession of defense counsel when in the presence of defense counsel.[3] As noted above, defense counsel refuses to consent to this request.

---

[3]     To the extent the Confidential Information included some information properly produced to the defendant, that information was or will be produced to the defendant in the ordinary course (i.e., it was duplicated in Rule 16 discovery, or it will be provided in the normal course of pre-trial disclosures like the provision of 3500 material).

A protective order may appropriately require the return of confidential information provided to the defendant and preclude any further confidential information from being provided to the defendant. See, e.g., United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008) (protective order entered for classified information); United States v. Luchko, No. 06 Cr. 319, 2007 WL 1651139, at *7 (E.D. Pa. Jun. 6, 2007) (protective order entered because of, among other reasons, personal privacy interests of third parties); United States v. Garcia, 406 F. Supp. 2d 304 (S.D.N.Y. 2005) (entering protective order governing defendants' access to and disclosure of Jencks Act material).

In this case, a protective order will protect Government witnesses from threats, intimidation, retaliation, violence, or any other tampering by the defendant or others acting on his behalf. The Government has learned through experience that information like the Confidential Information may be used by incarcerated defendants to harass, threaten, and retaliate against witnesses. That risk is vastly increased when the Confidential Information is in the personal possession of an incarcerated defendant, where it can be shown, dictated, read, or passed to visiting relatives and/or associates.

There is some evidence, in fact, that the defendant has already taken such steps in this case. Although the conversation is coded, in a recorded telephone call on September 5, 2012 from the Metropolitan Detention Center, the defendant asks the woman he is speaking with to go to the address of his "ex-girlfriend," which he explains is on a piece of paper the woman should get from his father, so that she can Google the address to see whether the "ex-girlfriend" lives there. He further identifies the "ex-girlfriend" as the one who had "called" and about whom he had asked previously whether she "could see from there." Based on the defendant's description of the location, the Government believes the defendant is directing the woman to the home of one of the 911 callers in this case. A copy of the recorded telephone call will be hand-delivered to the Court tomorrow.

The only effective way to prevent the defendant from copying or spreading the Confidential Information is to preclude the defendant from taking it with him into prison. Many judges within this District have granted similar motions by the Government, and have issued protective orders precluding defendants from possessing certain material in prison, including 3500 Material, that discusses civilian witnesses. See, e.g., United States v. Martin Pedro, S3 03 Cr. 346 (SHS) (armed bank robbery, Hobbs Act robbery, weapons offenses), aff'd, United States v. Rivera, 153 Fed. Appx. 758, No. 04-2999-cr, 2005 WL 2323170 (2d Cir. Sept. 23, 2005); United States v. Nelson Martinez, S30 04 Cr. 48 (JSR) (narcotics trafficking, weapons possession), aff'd, United States v. Moore, 322 Fed. Appx. 78, 2009 WL 1033608 (2d Cir. Apr. 17, 2009); United States v. Romeo Barnett, 05 Cr. 1007 (JFK) (narcotics conspiracy, weapons possession and discharge).

Precluding the defendant from personally possessing the Confidential Information in prison will not unduly prejudice his defense, since defense counsel will retain full access to the Confidential Information. Because the Government's proposed protective order is necessary to protect the confidential information of its witnesses, and because the request is well founded in the law, the Government respectfully requests that the Court grant its request.

## III. The Defendant Has the Additional Information He Seeks

Finally, the defendant writes that he "has reason to believe that the Government possesses NYPD reports documenting interviews with witnesses who worked at the lounge" where the defendant pulled a gun, and that those "witnesses denied seeing Mr. Morgan with a gun on February 20, 2012." Def. Ltr., dated Sept. 9, 2013, at p. 1. The defendant also argues that "some witnesses indicated that the ID scanner at the lounge showed that Mr. Morgan was not present in the lounge on February 20, 2012." As a result, the defendant suggests, the Government should be required to provide "open file" discovery. Id. at p. 2.

The information the defendant seeks has already been provided to the defendant. In the Complaint, the Government disclosed that a witness who had seen the defendant with a gun had initially told the police that he did not recall seeing the defendant that night at the Lounge. See Compl., p. 2, n 1. In addition, police reports reflecting that witness's statements, as well as a description of the Lounge's ID scanner, its failure to record the defendant's ID on the night in question, and the Lounge's uneven record of capturing its patrons' identification cards, were part of the Confidential Information inadvertently disclosed to the defendant on April 4, 2012. In short, the defendant already is in possession of the information he now appears to be seeking. Accordingly, there is no reason to order "open file" discovery.

## Conclusion

In light of the facts of this case, the defendant's criminal history, and the applicable law, the Government respectfully requests that the Court:

(1) modify the schedule for production of 3500 Material such that the Government provide 3500 material for the law enforcement witnesses on September 25, 2013, the Wednesday before trial begins, and provide 3500 Material for civilian witnesses September 27, 2013, the Friday before trial begins; and

(2) enter a protective order requiring: (a) that the defendant immediately return to his counsel the Confidential Information (and all copies thereof); (b) that the defendant may not obtain or be provided any further Confidential Information (c) that the defense return or destroy the Confidential Information (and any copies thereof), at the conclusion of the trial or when any appeal has become final; (d) that the defense is precluded from disseminating the Confidential Information (and any copies) to anyone other than defense counsel, and any paralegal or staff

employed by the defense; and (e) that the defendants himself is precluded from taking any Confidential Information (or any copies thereof), into any jail facility, either before, during, or after trial; except that the defendants may review Confidential Information in the possession of defense counsel when in the presence of defense counsel.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Amy Garzon
Assistant United States Attorney
Southern District of New York
(212) 637-2431

cc: Rita M. Glavin, Esq. (by email)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by the Government.

SO ORDERED.

9-16-13
DATE        VICTOR MARRERO, U.S.D.J.