UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                       :

  UNITED STATES OF AMERICA,      :

                                                   :
                - v. -                      :          12 Cr. 223 (VM)
                                                 :

  JOHNNY MORGAN,                   :

                         Defendant.     :

                                                 :
------------------------------------------------------X


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN SUPPORT OF ITS MOTION *IN LIMINE*


                                                                PREET BHARARA
                                                               United States Attorney for the
                                                               Southern District of New York
                                                               One St. Andrew's Plaza
                                                              New York, NY 10007


Amy Garzon
Joan Loughnane
Assistant United States Attorneys
     -Of Counsel-

**PRELIMINARY STATEMENT**

The Government respectfully submits this motion *in limine* to seek (a) a ruling precluding the defense from cross-examining witnesses about charges, convictions, and specific instances of conduct not permitted by Federal Rules of Evidence 608 and 609; and (b) a ruling permitting the introduction of a 911 call, whether or not the caller testifies at trial.[1]

**BACKGROUND**

On or about February 20, 2012, the defendant, who previously had been convicted of a felony, possessed a firearm, namely a .40 caliber, Model 23, semiautomatic Glock (the "Glock"). On March 2, 2012, the defendant was charged by complaint with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g). On March 15, a Grand Jury returned a one-count indictment with the same charge.

The Government expects both law enforcement and lay witnesses will testify in connection with the defendant's possession of the Glock. NYPD Police Officer Josue Sepulveda is expected to testify at trial. In interviewing Officer Sepulveda, the Government learned that Officer Sepulveda received a command discipline when a package of drugs remained in his police vehicle after an arrest. Officer Sepulveda overlooked the package when he searched the vehicle at the end of his tour.

The Government also expects to call several lay witnesses at trial, about whom the

---

[1] In light of statements made by the defendant in recorded telephone calls, the Government inquired of defense counsel whether the defendant would be raising a defense based on intoxication, or physical incapacitation of some kind. Defense counsel said the defendant would not present such a defense. If the defendant makes such an argument, the Government seeks a ruling precluding those arguments, because intoxication is not a defense to being a felon in possession of a firearm. *See United States* v. *Williams*, 403 F.3d 1188 (10th Cir. 2005) (being a felon in possession of a firearm is a general intent crime and voluntary intoxication is not a defense to a general intent crime); *see, e.g.*, *United States* v. *Sewell*, 252 F.3d 647 (2d Cir. 2001) (voluntary intoxication is not a defense to a general intent crime the court therefore properly excluded evidence and declined to give instructions relating to voluntary intoxication).

Government has learned the following: In or about 2003, Fabricio Alonzo, who was an employee at Pompeii Lounge and Bar ("Pompeii"), was charged in New York State in connection with an alleged rape. The charge was dismissed. In or about 2004, Alonzo was charged in New York State with possession of narcotics with intent to sell eight bags of crack-cocaine. Alonzo pleaded guilty to a misdemeanor in connection with this charge. In or about 2005, Alonzo was charged with grand larceny and unauthorized use of a vehicle for taking a vehicle that did not belong to him for a 30-minute ride. The same year, Alonzo was charged with possession of narcotics with intent to sell when he sold a quantity of a controlled substance to an undercover police officer in exchange for buy money. Alonzo attended an out-patient program and pleaded guilty to a misdemeanor on the theft and 2005 narcotics charges. All of these charges are sealed and none appear on his rap sheet.

      Robert Portela, another employee at Pompeii Lounge, is also expected to testify at trial. In or about 2002, Portela was charged with juvenile assault in New York State after punching another person. In or about 2003, Portela was again charged with assault in New York State in connection with punching another person. In or about 2004, Portela was charged with violating a protection order in New York State after calling another person in violation of an order of protection. Portela was also charged with criminal trespassing for being on the grounds of a school, but this charge was dismissed when he provided identification. All of these charges are sealed and none appear on his rap sheet.

      Jamil Toogood, another former employee at Pompeii Lounge, is also expected to testify at trial. In 2013, Toogood was arrested and given a ticket for smoking marijuana. This charge has been adjourned in contemplation of dismissal.

Jose Torres, the owner of Pompeii Lounge, is also expected to testify at trial. In 2000, Torres plead guilty to criminal possession of a controlled substance. In 2009, Torres plead guilty to driving while impaired.

Finally, the Government may call Heriberto Santa, a witness who lives in the vicinity of the Tremont section of the Bronx, to testify about a 911 call that Santa made on February 20, 2012 regarding a man with a gun. Mr. Santa reported seeing a man with a gun, but never identified the defendant as the man he saw, and the Government does not expect Santa to make an identification at trial. Several years ago, on or about August 7, 2010, Mr. Santa was a victim of another crime, when he was slashed on his neck, requiring multiple stitches (the "2010 Case"). In connection with the 2010 Case, Santa identified a man who he believed to be his assailant, and that man was arrested and charged by the Bronx District Attorney's Office ("Bronx D.A.'s Office") with one count of attempted assault. In our about May 2011, Santa called an Assistant District Attorney ("ADA") at the Bronx D.A.'s Office to inform her that he believed he had seen his assailant on the street and he [Santa] was very nervous because he believed his assailant was incarcerated. Mr. Santa told the ADA that he had obtained his assailant's name and that name did not match the charged defendant. When the ADA informed Mr. Santa that the charged defendant and the man Mr. Santa had seen on the street (and believed to be his assailant) were two different people, Mr. Santa asked the ADA to release the charged defendant. According to a court document filed in the 2010 Case, Mr. Santa stated that "all black people look the same."

**APPLICABLE LAW**

**I.      The Scope of Cross Examination Is Within the Sound Discretion of the Court.**

It is well settled that the scope and extent of cross-examination is within the sound discretion of the Court, *United States* v. *Wilkerson,* 361 F.3d 717, 734 (2d Cir. 2004), and that the Court may properly bar cross-examination that is marginally relevant to the issues before the Court. *United States* v. *Maldonado-Rivera,* 922 F.2d 934, 956 (2d Cir. 1990). "[T]he decision to restrict cross-examination will not be reversed absent an abuse of discretion." *United States* v. *Lawes,* 292 F.3d 123, 131 (2d Cir. 2002) (internal citations omitted). Moreover, Federal Rule of Evidence 611(b) provides that the Court may properly limit "cross-examination to the subject matter of the direct examination and matters affecting the credibility of the witness," and Rule 611(a) provides that the Court should "protect witnesses from harassment or undue embarrassment."

**II.     Federal Rule of Evidence 609 Generally Bars Cross-Examination about Misdemeanor Convictions and Any Convictions Over Ten Years Old.**

Federal Rule of Evidence 609(a) provides generally that evidence in a criminal case that a witness other than the defendant has been convicted of a crime shall be admitted "to attack[] a witness's character for truthfulness" under two sets of circumstances: (1) "subject to Rule 403," if the crime was punishable by more than one year; or (2) "if the court can readily determine that establishing the elements of the crime involved proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a). However, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of that conviction "is admissible only if," *inter alia*, "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

4

### III. Federal Rule of Evidence 608 Limits Cross-Examination About Other Instances of Bad Conduct to Incidents That Are Probative of Truthfulness.

Rule 608(b) limits cross-examination regarding "specific instances of a witness's conduct," other than criminal convictions, to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Rule 608(b) "'does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness.'" *United States* v. *Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States* v. *Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). "Further, under Rule 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Crowley*, 318 F.3d at 417 (internal quotation marks omitted). Among the factors that a Court should consider in determining whether to permit cross-examination under Rule 608(b) is how long ago the act in question occurred. *United States* v. *Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989) ("[R]emoteness in time remains a relevant factor to consider the probative value of the evidence" for impeachment under Rule 608(b)).

Applying these principles, courts within the Second Circuit have routinely precluded cross-examination of witnesses regarding their prior bad acts—even when those acts involved misconduct far more serious than the ones in the present case—where the connection to "the witness's propensity to tell the truth" was "tenuous." *United States* v. *Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978) (affirming trial court's decision to preclude questioning on "prior acts of sodomy upon young children"); *see also United States* v. *Salameh*, 152 F.3d 88, 131-32 (2d Cir. 1998) (affirming refusal to allow cross-examination based on prior acts involving robbery,

5

assault, and sodomy because too remote in time and not probative of veracity); *United States* v. *Agostini*, 280 F. Supp. 2d 260, 261-62 (S.D.N.Y. 2003) (precluding cross-examination regarding government witness's arrest for misdemeanor assault, misdemeanor menacing, and misdemeanor aggravated harassment because "crimes of violence . . . have little bearing on a witness's credibility"); *United States* v. *Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996) ("[T]he loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling.").

## ARGUMENT

### I. The Lay Witnesses' Prior Arrests and Convictions Are Inadmissible under Rules 608 and 609, and Do Not Bear on Their Truthfulness.

None of the arrests and convictions described above should be subject to cross examination. First, criminal convictions that are over ten years old are presumptively excluded under Federal Rule of Evidence 609(b). Accordingly, Mr. Torres' conviction in the year 2000 for criminal possession of a controlled substance, and the assault charges against Mr. Portela in 2002 and 2003, are presumptively excluded on the basis of their age alone.

While the Lay Witnesses' past *convictions* are properly excluded under Federal Rule of Evidence 608, 609, and 403, prior arrests more than ten years old which did *not* result in convictions should certainly be precluded. *See United States* v. *Toner*, 728 F.2d 115, 122 (2d Cir. 1984) ("[Where] matters would have been excludable under Fed. R. Evid. 609, had they resulted in convictions, because they antedated the ten year time limit set forth in that rule[,] as 'mere' arrests, it was clearly appropriate for the court to exclude the evidence."); *see also United States* v. *Vereen*, No. 3:99 CR. 279, 2000 WL 490740, at *6 (D. Conn. 2000) ("[C]ourts have generally applied the ten-year limit of Rule 609(b) to Rule 608, despite the absence of explicit language to that effect under Rule 608.") (collecting cases). For this reason, the criminal trespass

6

charges against Mr. Portela, and the 2003 rape allegation against Mr. Alonzo, both of which were dismissed, should be precluded. These charges are over ten years old, and they never resulted in convictions. *See Nelson*, 365 F. Supp. 2d at 386.

Rule 609 also limits cross-examination regarding prior convictions to felonies, unless "the court can readily determine that establishing the elements of the crime involved proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a). For this reason too, the Court should preclude cross-examination regarding Alonzo's narcotics misdemeanor conviction and Toogood's marijuana possession charge, which has been adjourned in contemplation of dismissal, and is therefore likely to result in no conviction of any kind.

Cross-examination regarding the Lay Witnesses' petty drug offenses, vehicle offenses, assaults, and other charges that did not result in convictions, should be precluded because none of the incidents at issue have an element of falsehood. None are probative of truthfulness. *See, e.g., United States* v. *Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) ("[T]he second prong of Rule 609(a) is . . . restricted to convictions that bear directly on the likelihood that the defendant will testify truthfully (and not merely on whether he has a propensity to commit crimes). It follows that . . . crimes of stealth, such as . . . petit larceny, do not come within this clause.") (internal citations omitted); *United States* v. *Puco,* 453 F.2d 539, 543 (2d Cir. 1971) ("[W]e believe that a narcotics conviction has little necessary bearing on the veracity of the accused as a witness."); *United States* v. *Rosa*, 11 F.3d at 336 (cross-examination regarding witness's rape and burglary properly precluded); *United States* v. *Salameh*, 152 F.3d at 131-32 (affirming Judge Duffy's refusal, after *in camera* review, to disclose information regarding government witness's prior arrests and convictions for robbery, assault, sodomy, and disorderly conduct on the ground the crimes were not probative of truthfulness under Fed. R. Evid. 608(b)).

### II. Cross-Examination of Officer Sepulveda Regarding His Command Discipline Should Be Barred Because It Is Not Probative of Truthfulness.

Cross-examination of Officer Sepulveda regarding his command discipline should also be barred. As a matter other than a criminal conviction, under Rule 609, inquiry into the command discipline is appropriate only if the incident bears of truthfulness or falsity, which it does not. Nor is it relevant to any issue in his testimony.

The Second Circuit's decision in *United States* v. *Lawes,* 292 F.3d 123 (2d Cir. 2002), is instructive on this point because it demonstrates that courts often preclude cross-examination of law enforcement witnesses for unrelated conduct of a more serious nature than mistakenly overlooking a piece of evidence in a car. In *Lawes*, the Government sought to preclude the defendant from cross-examining a law enforcement witness about an earlier finding by the Civilian Complaint Review Board ("CCRB") that the witness, in an unrelated incident, had used excessive force against an arrestee. Judge Duffy granted the Government's motion, finding that such evidence was not probative of truthfulness and furthermore would be a distraction from the salient issues presented in the underlying case. Affirming his reasoning, the Second Circuit held that "the proposed cross examination was of little, if any, plausible relevance to [the witness's] credibility." *Id* at 131. The Circuit noted that the CCRB's finding that the witness used excessive force provided "nothing of value" with respect to the witness's motive to lie about the circumstances of the defendant's arrest. *Id.* at 131-32; *see also United States* v. *Laster,* S1 06 Cr. 1064 (JFK), 2007 WL 2872678, at *2 (S.D.N.Y. Sept. 28, 2007) (Keenan, J.) (precluding defense from cross-examining police officer concerning substantiated CCRB complaint that he failed to secure prompt medical attention for an arrestee because the incident or the facts underlying the charge did not bear on the officer's credibility).

### III. The Defendant Should Be Precluded From Cross-Examining Lay Witnesses about Prior Drug Use.

The defendant should also be precluded from cross-examining the Lay Witnesses about prior drug use, which is not probative of truthfulness for purposes of Federal Rule of Evidence 608(b). *See, e.g.*, *Sellers,* 906 F.2d at 602 ("[P]rior instances of drug use are not relevant to truthfulness for purposes of Fed. R. Evid. 608(b)."); *United States* v. *McDonald,* 905 F.2d 871, 874 (5th Cir. 1990); *Jarrett* v. *United States,* 822 F.2d 1438, 1446 (7th Cir. 1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.").

Courts have recognized that there may be limited circumstances in which a witnesses' past drug use is relevant to his or her ability to perceive events, *Furlong* v. *Circle Line Statue of Liberty Ferry*, 902 F. Supp. 65, 69 (S.D.N.Y. 1995) (Chin, J.), or as a reflection of potential bias in favor of the Government because "the witness is likely to curry the favor of government attorneys in order to avoid prosecution" for drug use, *United States* v. *Atherton,* 936 F.2d 728, 733 (2d Cir. 1991). In this case, however, with respect to Mr. Toogood, there is no indication that his arrest for smoking marijuana in July 2013 affected his ability to perceive any of the events at issue in this case on or about February 20, 2012. In addition, because his case already has been adjourned in contemplation of dismissal, there is no evidence that his testimony is motivated by a desire to avoid future prosecution. Cross-examination about drug use would confuse and prejudice the jury, and should be precluded.

### IV. Cross-Examination of Mr. Santa's Statement in his Slashing Case Should Be Precluded Because it is Irrelevant As Mr. Santa Did Not Identify the Defendant

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

9

action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

As set forth above, in 2010, Mr. Santa was the victim of a violent slashing. He cooperated with law enforcement and identified the person he believed had slashed him. At some point later, after seeing a man on the street who looked like his attacker, he became concerned that the man who attacked him was not the man who had been identified and charged. In that context, in a case in which Mr. Santa was concerned about an identification he had made and its consequences, a filing by the Assistant District Attorney in the case indicated that Mr. Santa said that "all black people look the same."

Mr. Santa's statement to the ADA in the 2010 Case is not relevant in this matter, and any potential probative value would be substantially outweighed by the dangers of unfair prejudice and confusion of the issues. Mr. Santa called 911 in the early morning of February 20, 2012 to report a man with a gun. NYPD officers later showed Mr. Santa a group of photographs that included the defendant, and Mr. Santa could not identify the man he had seen with a gun from that line up. Mr. Santa is not expected to make an in-court identification. In these circumstances, his statement that "all black people look the same," which was made in

connection with another identification procedure in another case, is not relevant and is likely to confuse the issues before the jury. Mr. Santa's statement, which refers to "all black people," is also very likely to be unfairly prejudicial. Whatever probative value the statement may have, if any, is substantially outweighed by the danger of unfair prejudice, and cross-examination on this basis therefore should be precluded.

### V. The 911 Call by Mr. Santa Should Be Admitted, Whether or Not Santa Testifies.

Finally, the Government seeks a ruling that the 911 call placed by Mr. Santa, reporting the fact that he observed a man with a gun in the vicinity of Balcom Avenue and Latting Street in the Bronx should be admitted whether or not Mr. Santa testifies. *See* Exhibit 1 (911 Call). If Mr. Santa does not testify, the Government will seek to admit the call through a witness from the Communications Division of NYPD that is responsible for maintaining records of 911 calls.

911 calls that are narrations of ongoing events may be admitted under exceptions to the hearsay rule either as present sense impressions, under Rule 803(1), or excited utterances, under 803(2). *See, e.g., United States* v. *Urena*, 2013 WL 5272933 (S.D.N.Y.) (discussing admissibility of 911 calls). Rule 803 permits admission of evidence under its exception whether or not the declarant is available. *See* FED. R. EVID. 803. Admission of such calls is also permissible under *United States* v. *Crawford*, 541 U.S. 36 (2004), which allows only non-testimonial hearsay statements to be admitted without running afoul of the Confrontation Clause.

In *Davis* v. *Washington*, 547 U.S. 813, the Supreme Court considered the admissibility, under *Crawford*, of a 911 call placed by the victim of a domestic violence incident. At trial, the victim did not testify, but the trial court admitted the recording of her call over the objection of the defendant. In considering whether the call was "testimonial" under *Crawford,* and whether its admission therefore violated the defendant's confrontation clause rights, the Court noted that

11

the 911 caller in *Davis* was "speaking about events *as they were actually happening*," and "facing an ongoing emergency." *Davis* at 827. The Court also noted that the statements on the 911 call were "necessary to be able to *resolve* the present emergency, rather than simply to learn . . .what had happened in the past." *Id*. In light of these characteristics, the Court concluded that "the primary purpose [of the 911 call] was to enable police assistance to meet an ongoing emergency," and accordingly the call was not testimonial under *Crawford* and its admission was proper. *Id.* At 828.

In deciding whether a communication is non-testimonial, and therefore permissible under *Crawford*, the "ultimate inquiry is whether 'the primary purpose of the interrogation [was] to enable police assistance to meet [an] ongoing emergency." *Michigan v. Bryant*, 131 S. Ct. 1143, 1157 (2011). Although courts should consider all of the circumstances when determining the primary purpose of a communication with the police, the Supreme Court has highlighted the special consideration that should be given to guns, which often create continuing emergencies. "An emergency does not last only for the time between when the assailant pulls the trigger and the bullet hits the victim," the Court has written; it is "implausib[le], at least as to certain weapons, [to construe] the emergency to last only precisely as long as the violent act itself." *Id*. at 1164.

Applying these cases, it is clear that Mr. Santa's 911 call was a non-testimonial statement to the police, and therefore is admissible. Mr. Santa reported an ongoing emergency – a man with a gun – and provided the police with information, in real time, necessary to resolve the emergency. He did not identify a particular individual, but instead sought to end the emergency situation. The Government therefore respectfully submits that his 911 call should be admitted, whether or not Mr. Santa testifies.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court limit defense counsel's argument and cross-examination as described above and permit the introduction of Mr. Santa's 911 call, whether or not Mr. Santa testifies at trial.

Dated: New York, New York
       September 23, 2013

                                       Respectfully submitted,

                                       PREET BHARARA
                                       United States Attorney for the
                                       Southern District of New York

                     By:    /s/ Amy Garzon
                            Amy Garzon
                            Joan Loughnane
                            Assistant United States Attorneys
                            (212) 637-2431/(212) 637-2265

## CERTIFICATE OF SERVICE

The undersigned attorney, duly admitted to practice before this Court, hereby certifies that on the below date, he served or caused to be served the following document(s) in the manner indicated:

**Memorandum of Law of the United States of America in Support of Its Motion *In Limine* to Admit Evidence Pursuant to Federal Rule of Evidence 404(b)**

Service via ECF and email upon the following attorneys:

Rita M. Glavin, Esq.
David Driscoll, Esq.

Dated: New York, New York
September 23, 2013

                                      PREET BHARARA
                                      United States Attorney

                             By: /s/ Amy Garzon
                                      Amy Garzon
                                      Assistant United States Attorney