UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,            :
                                     :    12 Cr. 223 (VM)
        v.                           :
                                     :
JOHNNY MORGAN,                       :
                                     :
            Defendant.               :
------------------------------------------------------X


**DEFENDANT JOHNNY MORGAN'S BRIEF IN SUPPORT
OF HIS MOTION FOR SANCTIONS AND THE EXCLUSION OF EVIDENCE,
OR, ALTERNATIVELY, TO RE-OPEN THE <u>DAUBERT</u> HEARING RECORD**


COUNSEL FOR JOHNNY MORGAN
Rita M. Glavin
David J. Driscoll
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza,
New York, New York 10004
212-574-1309

Defendant Johnny Morgan respectfully submits this brief in support of his motion for sanctions and the exclusion of evidence, or, alternatively, to reopen the <u>Daubert</u> hearing record.

**Preliminary Statement**

This motion arises out of the government's belated disclosure of <u>Brady</u>, <u>Giglio</u>, and Rule 16 material (the "New Information"), which the government possessed during the January 2014 <u>Daubert</u> hearing but did not begin producing to the defense until February 6, 2014.  The New Information is not only relevant to the defense's <u>Daubert</u> motion, but it in fact directly contradicts the arguments made by the government and the testimony it elicited at the <u>Daubert</u> hearing.  As explained below, OCME's low copy number ("LCN") DNA testing results should be excluded from trial, or, alternatively, the <u>Daubert</u> hearing record reopened.

<u>First</u>, LCN test results should be excluded from trial because OCME was not accredited or authorized to conduct the specific testing performed in this case.  Despite the government's repeated touting of OCME's 2005 accreditation, the New Information establishes that OCME repeatedly assured the New York State Commission on Forensic Science (the "Commission") that **"we will not amplify anything below 20 picograms."**  Thus, OCME was not accredited and therefore not authorized under New York Executive § 995-b to conduct the testing performed on the 14.15-picogram mixed, degraded sample at issue in this case.

<u>Second</u>, LCN test results should be excluded from trial because the government did not make timely disclosure of the Rule 16, <u>Brady</u>, and/or <u>Giglio</u> information in its possession.  Despite receiving the New Information on January 30, during the <u>Daubert</u> hearing, the government failed to provide it to the defense until the following week, *after* the <u>Daubert</u> hearing had concluded and *after* the Court had ruled on the defense's motion.  As a result, the government should be sanctioned and the LCN testing results excluded from use at trial.

Finally, and in the alternative, the Court should reopen the Daubert hearing record to allow proper consideration of the New Information.  The New Information establishes several critical points relevant to the issues before the Court at the Daubert hearing (discussed in further detail *infra* at Section III), most notably that OCME did not obtain accreditation to conduct LCN testing on samples below 20 picograms, and OCME expressly assured the Commission in 2005 that it would **not** perform LCN testing on samples below 20 picograms because of the lack of reliable results.  And further, that OCME does not conduct "proficiency tests" on samples less than 100 picograms, despite Dr. O'Connor's testimony that OCME's LCN testing methodology is "reliable" because of the consistent results found in OCME's "proficiency tests."

Because of the gravity of these recent disclosures and the government's withholding of Rule 16, Brady, and/or Giglio material, the defendant's constitutional right to Due Process demands that the LCN test results be excluded, or that the Daubert record be re-opened and that the defense be given an opportunity to present further evidence relating to the New Information.

### Statement of Facts

On January 30, 2014, before the Daubert hearing had concluded and before the Court had ruled on the defense's motion, the government received the New Information from the Commission, which consists of meeting minutes, agenda items, correspondence, presentations and meeting transcripts of the Commission and its DNA Subcommittee from 2005 and 2006.  These items deal specifically with OCME's LCN validation data and OCME's representations to the Commission and the DNA Subcommittee on the LCN testing it would perform, the minimum thresholds and reliability of such LCN testing, and the LCN testing quality assurance program that OCME intended to implement.  The New Information primarily concerns OCME's 2005 request to the Commission for approval to conduct LCN testing, and the government repeatedly

relied upon the Commission's approval in defending the use of LCN testing on a mixed, degraded 14.15-picogram DNA sample. *See, e.g.*, Gov't Opp'n at 4-6; <u>Daubert</u> Hearing Tr. at 46, 77, 97-98, 258-59. However, the government did not provide the New Information to the defense during the course of the <u>Daubert</u> hearing.

On the evening of February 6, 2014, the government produced approximately 60 pages of the New Information, with extensive redactions.[1] Following several defense requests for additional information referenced in (and clearly a part of) the New Information, the government produced an additional 340 pages of the New Information on February 10, 2014.[2] All of this information was in the government's possession as of January 30 – as the <u>Daubert</u> hearing was occurring. *And, the government received this information via email from the Commission on January 30 at approximately 7:43 p.m. in response to the government's faxed subpoena for that specific information, which they sent about two hours earlier – at approximately 5:53 p.m. on January 30*. *See* Declaration of Rita M. Glavin, dated Feb. 14, 2014 ("Glavin Decl."), ¶¶ 2-3.

The February 10, 2014 production contained the transcripts of the relevant December 2005 meeting in which OCME assured the Commission that it would not conduct LCN testing on samples below 20 picograms. Specifically, OCME's then-Director of Forensic Biology, Dr. Mechthild Prinz, told the Commission that because of "peak imbalance" and "stochastic effects," "**we decided we will not amplify anything below 20 picograms.**" Glavin Decl. Ex. A (Dec. 6, 2005 Commission meeting), at 19:11-20:15 (emphasis added). Dr. Prinz further noted that

---

[1]   Why the government needed to redact information produced to it by the Commission before turning it over to the defense remains a mystery. Under New York law, the Commission is required to archive all of its "records, reports, assessments, and evaluation with respect to accreditation," *see* N.Y. Exec. Law § 995-b(6), and the New Information would presumably be available to the public pursuant to a FOIA request. Moreover, the cover email to these documents plainly described that these materials entirely related to the Commission's consideration and approval of LCN testing back in 2005.

[2]   As we were preparing this brief, the government continued to produce additional information relevant to the <u>Daubert</u> hearing. The defense reserves its right to further supplement this motion as additional information becomes available and we have further time to review the hundreds of pages produced in the last several days.

3

"stochastic effects are inherent," and again, "**we will not amplify below 20 picograms**." *Id.* at 20:8-15 (emphasis added). Dr. Prinz also emphasized that for LCN testing, OCME only validated testing down to 20 picograms and OCME's LCN quality control program only included samples from "20 up to . . . a hundred" picograms for casework. *Id.* at 24:16-25:5. Dr. Prinz further stated that testing below 20 picograms is "trial and error" and that despite OCME's proposal to conduct LCN testing on samples as low as 20 picograms, it would only perform proficiency tests on samples of 100 picograms and above. *Id.* at 21:2-22. This was met with grave concerns by a number of members of the Commission and there was much debate as to whether OCME should be testing 20-picogram samples when the quality assurance program did not conduct proficiency testing at such low levels.

## Argument

I. **OCME Was Not Accredited, And Therefore Not Authorized By Law, To Conduct LCN Testing On Samples Below 20 Picograms**

As noted above, OCME repeatedly assured the Commission during its December 6, 2005 presentation that LCN testing would not be performed on samples less than 20 picograms because of the lack of reliability below that amount. *See* Glavin Decl. Ex. A at 20:6 ("we will not amplify anything below 20 picograms"); *id.* at 20:15 ("we will not amplify below 20 picograms"); *id.* at 25:2-5 (representing that OCME will only use LCN testing for samples between 20 to 100 picograms); *see also* Glavin Decl. Ex. B at 85 (Dr. Prinz stating that if asked the limits of LCN testing in court, she "would say 25 picograms . . . gives you enough loci for an interpretation"). Just minutes after Dr. Prinz's representations to the Commission, the Commission voted to "approve" the use of OCME's LCN testing methodology. *See* Glavin Decl. Ex. A at 57:24-58:10.

4

The approval stemming from OCME's December 2005 presentation to the Commission did not authorize it to conduct testing on samples below 20 picograms. In fact, included in the documents produced on February 12 is a December 14, 2005 letter from the Commission that refers specifically to the minimum threshold for OCME testing. Glavin Decl. Ex. D (stating that OCME was authorized to perform testing at "the validated minimum template amount (20 picograms)"). Yet, in this case OCME purports to have created a major male donor from a 14-picogram mixed sample. Accordingly, the LCN test results should be excluded.

New York Executive Law § 995-b, which outlines the powers and duties of the Commission, states as follows:

> The commission shall develop minimum standards and a program of accreditation for all forensic laboratories in New York state, including establishing minimum qualifications for forensic laboratory directors and such other personnel as the commission may determine to be necessary and appropriate, and approval of forensic laboratories for the performance of specific forensic methodologies.

N.Y. Exec. Law § 995-b(1). The law further provides that:

> The accreditation of a forensic laboratory may be revoked, suspended or otherwise limited, upon a determination by the commission or, in the case of a forensic DNA laboratory, upon the binding recommendation of the DNA subcommittee, that the laboratory or one or more persons in its employ . . . is guilty of misrepresentation in obtaining a forensic laboratory accreditation.

*Id.* § 995-b(3)(e)(i). Finally, the law states that:

> A laboratory director who knowingly operates a laboratory without obtaining the accreditation required by this article, or who, with the intent to mislead or deceive, misrepresents a material fact to the commission or DNA subcommittee, shall be subject to a civil penalty not to exceed seventy-five hundred dollars and such other penalties as are prescribed by the law.

*Id.* § 995-b(4).

The Commission's approval of OCME's LCN methodology only authorized OCME to conduct testing on samples *above* 20 picograms. Here, OCME conducted LCN

5

testing on a 14-picogram mixed sample. For this reason alone, the test results should be excluded.

## II. The Government Should Be Sanctioned For Withholding Rule 16, Brady, and/or Giglio Material Until After The Daubert Hearing Had Concluded And The Court Had Ruled On The Defense's Motion

Notwithstanding OCME's apparent violation of New York law, the government should be sanctioned for withholding the New Information until *after* the Daubert hearing had concluded and *after* the Court had ruled on the defense's motion. The government received the New Information at approximately 7:40 p.m. on January 30 in response to a subpoena that it had served at approximately 5:40 p.m. The New Information is directly relevant to the issues that were before the Court and contradicts the arguments made by the government and the testimony elicited from its only witness at the Daubert hearing. Because the New Information was withheld by the government until after the Daubert hearing concluded, the LCN testing results should be excluded as a sanction for the government's conduct.

As the Court is aware, the defense's motion challenged the reliability of OCME's LCN testing, and in particular, OCME's purported ability to deduce a major male donor from a three-or-more person 14-picogram mixed crimestain DNA sample when its validation testing only tested as low as two-person buccal swab mixtures of 25 picograms. In response, the government touted OCME's 2005 accreditation for LCN testing and elicited testimony from its only witness, Dr. Craig O'Connor, about that accreditation, which is directly at odds with the New Information. *See* Gov't Opp'n at 31 ("OCME has been approved to perform LCN testing since 2005 by a body of experts in this field, the NYS Commission on Forensic Science and its DNA Subcommittee. That body saw no reason to limit LCN testing to quantities above 14 picograms, and imposed no such limit.") (emphasis in original); *see also* Daubert Hearing Tr. at 259 (Dr.

6

O'Connor testimony that no limits were placed by the Commission in 2005 on the types of mixtures that OCME could test using its LCN methodology).

As we now know, these statements are not true. The representations OCME made to the Commission in 2005, and the ensuing accreditation "by a body of experts in this field" was limited to testing on samples between 20 and 100 picograms.  *See* Glavin Decl. Ex. A at 20:8-15; 25:2-5.  For the government to withhold the New Information – and in fact produce it only upon request by the defense, in dribs and drabs, and with extensive redactions – is contrary to its obligations under Rule 16, Brady, and Giglio.  It is patently unfair, and a violation of Mr. Morgan's Due Process rights, for the government to complete an evidentiary hearing that concerned OCME's accreditation to conduct LCN testing and the reliability of such testing on a 14-picogram mixed sample without producing the New Information.  It is even more egregious for the government to do so when the New Information is directly contrary to the representations it made in its brief and by its only witness at the Daubert hearing.  As a sanction for the government's actions, the LCN test results should be excluded.

Trial has long been set for February 24. The defense has been severely prejudiced by the government's conduct in terms of the time diverted to reviewing these productions and the time needed to properly supplement the record and respond to these productions.  The New Information makes clear that the defendant did not get a fair Daubert hearing, and the government had information that directly supported the defense arguments and undermined their own position.

**III.   Alternatively, The Court Should Reopen The Daubert Hearing Record To Consider The New Information**

In the event that the Court declines to exclude the LCN test results, the Court should reopen the Daubert hearing record to consider the New Information.  The New Information

7

establishes several critical points, each of which goes to the heart of the issues before the Court at the Daubert hearing and supports the defense arguments for exclusion of this evidence under Rules 702 and 403.

First, and as noted above, OCME did not obtain accreditation to conduct LCN testing on samples below 20 picograms because of the unreliability of such testing. OCME repeatedly assured the Commission in 2005 that it would *not* perform LCN testing on samples below 20 picograms. Dr. Prinz cited "stochastic effects" and "peak imbalances" – the precise LCN interpretation issues highlighted extensively by the defense in its briefing and at the hearing – as reasons why OCME would not test below 20 picograms. Glavin Decl. Ex. A 19:11-20:15. Dr. Prinz represented that OCME's LCN "interpretation rules," including the "three amplification approach," were not designed to test below 20 picograms. *Id.* at 20:8-15. Despite these facts, OCME conducted LCN testing on a 14-picogram mixed sample, and the government incorrectly argued that OCME was approved to do so by the Commission. The government is seeking to introduce the results of the unauthorized testing methodology at trial, which OCME's Director of Forensic Science acknowledged to the Commission was unreliable below 20 picograms.

Second, OCME does not conduct "proficiency tests" on samples below 100 picograms. Nevertheless, the government contended at the Daubert hearing that OCME's LCN Testing methodology was reliable, in part, because of "proficiency tests" OCME performs on LCN samples. Daubert Hearing Tr. at 79, 127-29, 230-31 (claiming that proficiency tests help produce "consistent results" and it "shows that the processes we [OCME] do are reliable in producing reliable results"). Dr. O'Connor failed to mention that OCME does not do proficiency tests on DNA samples below 100 picograms, which is notable because Dr. Prinz represented to the Commission that LCN testing involves testing that "is generally defined as any DNA typing

8

below 100 picograms." Glavin Decl. Ex. A at 17:9-11. Thus, by its own definition, OCME does not conduct proficiency testing on LCN samples. Moreover, several Commission members were greatly bothered by OCME's failure to conduct proficiency testing on 20-picogram samples, the minimum amount OCME represented that it would test. *See id.* at 25:11-13 (Mr. Neufeld asking "Why wouldn't you want to do a proficiency test at the lower limit if they're willing to take casework at that the lower limit?"); 28:3-17 (Dr. Jenny expressing concern because in her discipline they "evaluate all lab results relative to their stated cutoff concentrations.").

Third, the DNA Subcommittee meeting minutes show that it had concerns about OCME's use of three replicate cycles in LCN testing. Specifically, the DNA Subcommittee contrasted OCME's LCN testing methodology with that of the United Kingdom's Forensic Science Service ("FSS") two replicate approach. Glavin Decl. Ex. B at 99-104. As the Court may recall, Dr. O'Connor testified that OCME "performed an internal validation study on previously established protocols from the FSS in the UK." Daubert Hearing Tr. at 82. At the September 9, 2005 DNA Subcommittee meeting, Dr. Prinz acknowledged that there were some in the scientific community who would only amplify an LCN sample once because of concern that the "triple amplification approach generates a *virtual profile*." Glavin Decl. Ex. B. at 99:4-11. The DNA Subcommittee reviewed a slideshow presentation on FSS's LCN testing, which noted that **for DNA removed from the handgrip/stock of a firearm, the chance of a "useful" result was only 18%.** Glavin Decl. Ex. C at JM004674. Here, Gun Swab #2 came from the handgrip of a firearm. Additionally, the FSS materials stated that labs doing LCN testing should "hope rather than expect a result" and that most samples generally had a less than 50% chance of yielding a useful result. *Id.* at JM004673.

Fourth, the New Information calls into question the extent to which the Commission authorized OCME to generate "major" donor profiles from mixed samples for use in criminal cases.  At the September 9, 2005 Subcommittee meeting, Dr. Prinz acknowledged that there is difficulty in determining a major profile in a 50:50 mixed sample. Glavin Decl. Ex. B. at 78.  Dr. Prinz stated, "The major component will only be formulated for those more extreme ratios." *Id.* at 78:24-79:2.  Her statements were consistent with OCME's draft LCN protocols submitted to the Committee and Commission in 2005, which state that for mixed samples, "only samples with a *maximum* of two contributors can be interpreted." Glavin Decl. Ex. E at JM005198 (emphasis added).  Although Dr. O'Connor testified at the Daubert hearing that he could not precisely determine the number of contributors to the LCN sample at issue, nor could he determine the ratio of the mixture, Daubert Hearing Tr. at 266-67, under OCME's own protocols, the sample must be from at least three people because of the existence of five or more alleles in at least two loci.  Glavin Decl. Ex. F at 3.

Finally, it is also notable that Dr. Prinz told the Commission that she believed LCN testing's proper role was more an "investigative tool."  Glavin Decl. Ex. A at 36.  When asked when she anticipated using OCME's LCN testing methodology in court, Dr. Prinz stated that "It's not like a regular DNA test where you say this DNA was found at the scene and that means he was at the scene.  There is also a secondary transfer issue where somebody could shake hands with somebody and transfer the DNA to the scene.  So it's more of an investigative tool." *Id.* at 36:12-19.  When asked directly if she was primarily interested in using LCN testing an *investigative tool*, Dr. Prinz responded, "Right." *Id.* at 42:6-10.  Based on the representations made to the DNA Subcommittee and the Commission, OCME should not have interpreted the mixed DNA sample in this case.

As the foregoing demonstrates, there is a wealth of information that was missing from the Daubert hearing record, which the government possessed at the time of hearing and which directly undermined the government's arguments to the Court. As the Court's ruling on this matter will likely become a focus of future litigants in cases involving OCME's LCN testing, it is imperative that no decision issue until the record is complete and the defense has a fair opportunity to present this important information that bears directly on the admissibility of the LCN evidence under Fed. R. Evid. 702 and 403. Thus, if the Court declines to exclude the LCN test results as set forth above, the defense respectfully requests that the Court reopen the Daubert hearing record to consider the New Information, and allow the defense to present evidence regarding the New Information. The LCN testing conducted in this case by OCME does not meet the Daubert standard, and the New Information directly supports the defense's argument in this regard.

## Conclusion

For the foregoing reasons, the defense respectfully requests that the Court sanction the government for withholding the New Information and exclude the LCN test results, or, alternatively, reopen the Daubert hearing record to consider the New Information.

New York, New York
February 14, 2014

                                                        Respectfully submitted,

                                                        SEWARD & KISSEL LLP

                                   By:    /s/ Rita M. Glavin
                                              Rita M. Glavin
                                              David J. Driscoll
                                              Michael B. Weitman
                                              One Battery Park Plaza
                                              New York, New York 10004
                                              (212) 574-1200
                                              *Attorneys for Defendant*
                                              *Johnny Morgan*